## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BALTIMORE-WASHINGTON** | | |
| **TELEPHONE COMPANY,** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Case No. RWT 06-3257 |
| | * | |
| **THE HOT LEADS COMPANY, LLC** | * | |
| **D/B/A MY HOT LEADS, et al.** | * | |
| | * | |
| Defendants | * | |

### <u>MEMORANDUM OPINION</u>

Plaintiff, Baltimore-Washington Telephone Company ("BWT"), filed its initial Complaint against The Hot Lead Company, LLC d/b/a My Hot Leads ("Hot Leads"), and Michael G. Horne and Robert M. Horne (the "Horne Defendants") on December 4, 2006. On March 28, 2007, Defendants filed a Motion to Dismiss. The Court held a hearing on this motion on October 15, 2007. Following the hearing, Plaintiff was granted leave to amend its Complaint, and therefore the Defendants' first Motion to Dismiss was denied as moot. Plaintiff filed its Amended Complaint on October 29, 2007, which named Don Magee and David Best as additional defendants[1] [Papers No. 22 and 23]. The Amended Complaint alleges causes of action for (1) violation of the Federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b); (2) injunctive relief; (3) violation of the Maryland Telephone Consumer Protection Act, Md. Code Ann., Com. Law § 14-3201(2) et seq.; (4) attorney's fees; (5) civil conspiracy to violate the federal TCPA and Maryland TCPA; and (6) aiding and abetting.

Before the Court is the Defendants' Motion to Dismiss Amended Complaint [Papers No. 25 and 26], filed by Hot Leads and the Horne Defendants on November 30, 2007. Defendants move to dismiss for (1) lack of subject matter jurisdiction under Rule 12(b)(1); (2) failure to state a claim under Rule 12(b)(6) because 47 C.F.R. § 64.1200(a)(7) exceeded the FCC's authority

---

[1]It does not appear that Defendants Magee and Best have ever been served, and they are not parties to the pending motion.

under the TCPA; and (3) failure to state a claim under Rule 12(b)(6) because the TCPA does not provide a cause of action for civil conspiracy or aiding and abetting.

## I. BACKGROUND

Plaintiff's causes of action stem from two separate but related alleged practices of the Defendants: sending unsolicited fax advertisements and "war dialing."

Plaintiff alleges that from about January 1, 2005 through the present, Defendants have knowingly and willingly used a telephone facsimile (fax) machine, computer, or other device to send over fifty unsolicited fax advertisements for goods and/or services to three of Plaintiff's fax numbers in Maryland.  Plaintiff claims that these fax advertisements were wholly unsolicited, received without its consent, and sent on behalf Defendants' business clients.  Plaintiff has no business relationship with Defendants or any of Defendants' clients.  Am. Compl. ¶¶ 23-27.

"War dialing" refers to the practice of using technology, such as an automatic dialing system, to dial blocks of phone numbers for the purpose of ascertaining whether the number is assigned to a voice or fax line.  War dialing is done in order to identify potential recipients for unsolicited fax advertising.

Plaintiff alleges that Defendants made thousands of such war dialing calls to numbers assigned to BWT.  Approximately 85% of these calls were made to numbers that BWT had not yet assigned to its customers, so the call was picked up by BWT's system, which transmitted a recorded message indicating that the number dialed was not in service.[2]  The calls picked up by BWT's system were brief because their only purpose was to distinguish voice lines from fax lines, and most lasted just a few seconds.  These calls were registered on BWT's circuits as invalid or incomplete.

Plaintiff expects a certain number of invalid or incomplete calls per day, such as when an

_____

[2]The other approximately fifteen percent of calls were received by BWT customers after passing through BWT circuits.

individual dials a wrong number, then quickly hangs up.  It alleges that on days in which Defendants made war dialing calls to BWT, BWT's operating system would reflect ten times the normal number of incomplete calls.  This would fill the invalid call file and require the expenditure of manpower to empty the file and store invalid call information.  BWT was also obligated to spend time and money investigating the calls to ensure the abnormal number was not due fraudulent calls or a malfunction of its own equipment. Am. Compl. ¶¶ 17-20.

Plaintiff further alleges that when Defendants dialed blocks of consecutive numbers assigned to BWT, all of its phones would ring simultaneously.  BWT's customers would then experience incompletion of their calls, and Plaintiff needed to expend man-hours speaking with those customers and investigating their service problems.  Plaintiff ultimately blocked its numbers from receiving Defendants' war dialing calls, requiring further manpower for both the initial blocking and continued monitoring of those numbers.  Am. Compl. ¶¶ 21-22.

## II. APPLICABLE LAW

### A. The Federal Telephone Consumer Protection Act of 1991

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, bans both unsolicited fax advertisements and, by regulation, "war dialing" to determine if a phone number is a fax machine or voice line.  Section 227(b) of title 47 provides:

> It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]

Regulations promulgated by the Federal Communications Commission under the TCPA further provide that "[n]o person may . . . [u]se any technology to dial any telephone number for the purpose of determining whether the line is a facsimile line or voice line." 47 C.F.R. § 64.1200(a)(7).

The TCPA provides a private right of action for injunctive relief and/or monetary

damages of $500 per violation that may be brought "in an appropriate [state] court" if otherwise permitted by state law.  47 U.S.C. § 227(b)(3).  In the case of willful or knowing violations,[3] courts have discretion to award treble damages.  *Id.*

### B. The Maryland Telephone Consumer Protection Act

The Maryland TCPA provides (1) that a person may not violate the federal TCPA, as implemented by the Federal Communications Commission (47 C.F.R. Part 64, Subpart L), (2) statutory damages of $500 per violation, and (3) reasonable attorneys fees.  Md. Code Ann., Comm. Law §§ 14-3201, -3202.

### III. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

The Court must grant a motion to dismiss under Fed. R. Civ. P. 12(b)(1) when a claim fails to allege facts upon which the court may base jurisdiction.  *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996).  The Court must accept factual allegations as true and construe them in the light most favorable to the plaintiffs, relying solely on the pleadings and disregarding affidavits or other materials.  *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 391 (D. Md. 2001). The Court will grant a 12(b)(1) motion only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).  Resolution of jurisdictional questions must occur before deciding whether a plaintiff states a proper cause of action.  *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

---

[3] "Willful" is defined as "conscious and deliberate."  47 U.S.C. § 312(f)(1).

### B.  Failure to State a Claim

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  In *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1969 (2007), the Supreme Court declared the "retirement" of the long-cited "no set of facts" standard first announced in *Conley v. Gibson*, 355 U.S. 41 (1957).[4]  The Court in *Twombly* looked instead to whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974,  observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 1964-65.  In sum, "factual allegations must be enough to raise a right to relief above a speculative level." *Id.* at 1965.

The Court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir. 2005).  Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002).

### IV. ANALYSIS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants argue that federal courts lack subject matter jurisdiction over suits between private parties alleging violations of the TCPA, and therefore this Court must dismiss the case.

---

[4] *Conley* stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants are incorrect, and this Court concludes that it may exercise subject-matter jurisdiction over Plaintiff's claims on the basis of diversity under 28 U.S.C. § 1332.

Although federal question jurisdiction does not exist for claims brought under the TCPA, *see Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146 (4th Cir. 1997), two circuit courts and several district courts have held that, despite the bar to federal question jurisdiction, a party may bring a private cause of action in federal court for violations of the TCPA based on diversity jurisdiction.[5]  *See, e.g., US Fax Law Center, Inc. v. Ihire, Inc.*, 476 F.3d 1112, 1118 (10th Cir. 2007); *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 341 (2d Cir. 2006); *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'n, LP*, 294 F. Supp. 2d 834, 840 (M.D. La. 2003); *Kopff v. World Research Group*, 298 F. Supp. 2d 50, 55 (D.D.C. 2003); *Kinder v. Citibank*, 2000 WL 1409762, *3-4 (S.D. Cal. Sept. 14, 2000).  The reasoning of these decisions is persuasive.  As noted by the Tenth Circuit, diversity is "an independent basis for jurisdiction, regardless of whether the underlying claim is federal in nature." *US Fax Law Center*, 476 F.3d at 1117.  "Nothing in § 227(b)(3), or any other provision of the statute, expressly divests federal courts of *diversity jurisdiction* over private actions under the TCPA." *Gottlieb*, 436 F.3d at 338 (emphasis added).  In addition, section 227(b)(3) and the diversity statute are not irreconcilable, especially given that one apparent purpose of divesting *federal question* jurisdiction was to alleviate federal courts of the need to handle small claims.  *See US Fax Law Center, Inc.*, 476 F.3d at 1117 (citing *Chair King, Inc. v Houston Cellular Corp.*, 131 F.3d 507, 513 (5th Cir. 1997)); *see also Int'l Sci. & Tech. Inst., Inc.*, 106 F.3d 1152-53 (discussing comments by Senator Hollings, the sponsor of the bill).  "Because there is no express congressional intent to preempt diversity jurisdiction, and because the diversity jurisdiction

---

[5] The Third Circuit has held that both federal question and diversity jurisdiction exist for private actions under the TCPA.  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446,  (7th Cir. 2005).  The Tenth Circuit in *US Fax Law Center* arguably mischaracterizes the Seventh Circuit's decision, however, by stating that it "rejected extension of the reasoning from TCPA federal question cases to TCPA diversity cases," 476 F.3d at 1116, incorrectly inferring it agreed to bar federal question jurisdiction under the TCPA.

statute and the TCPA are not irreconcilable," diversity jurisdiction remains available to private litigants under the TCPA. *US Fax Law Center, Inc.*, 476 F.3d at 1118.

Plaintiffs correctly argue that this Court may properly exercise diversity jurisdiction under 28 U.S.C §1332.  When a suit in federal court is based on diversity jurisdiction, the complaint must allege facts that show both complete diversity of citizenship and an amount in controversy greater than $75,000.  In this case, the parties are completely diverse. BWT is a Maryland corporation with its principal place of business in Maryland, Hot Leads is a Nevada limited liability corporation with is principal place of business in Texas, and the Horne Defendants, Don Magee, and David Best are all residents of Texas. Am. Compl. ¶¶ 1-7.

The amount in controversy requirement is also met.  BWT's amended complaint requests damages of at least $1,025,500, based on Defendants' "thousands" of war dialing calls to and through BWT's circuits, and the transmission of "over 50" unsolicited faxes, all in violation of the TCPA and FCC enforcement regulations.[6]  Although the precise calculations are unclear from face of the amended complaint, it appears that BWT bases this figure on an estimated fifty-one unsolicited faxes, and two thousand war dialing calls.[7]  In addition, Plaintiff has requested injunctive relief, which may be included in the calculation of the amount in controversy.  *See Hunt v. Washington State Apple Adver. Comm.*, 432 U.S. 333, 345 (1997).  Because the Court considers all well-pled allegations in a complaint as true when ruling on a motion to dismiss, Plaintiff has clearly alleged facts that satisfy the amount in controversy requirement for diversity jurisdiction.

Finally, Defendants claim that BWT is "alleging that Defendants are jointly and severally liable for conspiracy and aiding and abetting violations of the TCPA in an attempt to create diversity jurisdiction that does not otherwise exist." Def. Memo. in Supp. of Mot. to Dismiss

---

[6]BWT also alleges that Defendants' conduct was wilful and therefore that BWT is entitled to treble damages, or $3,076,500.

[7] (Fifty-one faxes) ($500/violation) + (2,000 war dialing calls) ($500/violation) = $25,000 + $1,000,000 = $1,025,500.

Am. Compl. at 3. Although Defendants' argument is not entirely clear, the Court need not resolve it, because the above analysis demonstrates that the Court properly has diversity jurisdiction over all of Plaintiff's claims on the basis of the federal and Maryland TCPA violations alone.

### B. Motion to Dismiss for Failure to State a Claim

1. <u>Validity of 47 C.F.R. § 64.1200(a)(7)</u>

Defendants challenge the authority of the Federal Communications Commission ("FCC") to ban "[u]se [of] any technology to dial any telephone number for the purpose of determining whether the line is a facsimile or voice line," 47 C.F.R. § 64.1200(a)(7), arguing that the TCPA includes no such ban and limits the FCC's authority to prescribe regulations to implement the requirements of the TCPA only.  47 U.S.C. § 227(b)(2).  Defendants contend that section 64.1200(a)(7) is facially overbroad in light of the statute's delegated authority and exceeds the statute's purpose of protecting privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home.  *See* S. Rep. 102-78, 1991 U.S.C.C.A.N. 1968.

Section 227(b)(2) of the TCPA instructs the FCC that it (1) "shall consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior consent"; (2) may exempt certain calls from paragraph (1)(B); (3) may exempt calls to numbers assigned to cellular telephone services that are not charged to the called party; (4) shall prescribe regulations related to notice of right to request no future unsolicited advertisements to fax machines; (5) shall prescribe regulations for such requests; (6) may allow tax-exempt professional and trade associations to send unsolicited advertisements to members without notice of right to refuse future advertisements; and (7) may limit the duration of the existence of an established business relationship.

As a preliminary matter, Defendants are incorrect in arguing that the Court may not

determine the validity of an FCC regulation.  Although the courts of appeals do have exclusive jurisdiction to determine the validity of FCC final *orders*, see 28 U.S.C. § 2342(a), the challenge here is to a "*rule*" or "*regulation*," not an order.[8]  Under the plain meaning of § 2342(a), the Court is not precluded from determining the validity of the challenged regulation.

The Court concludes that section 64.1200(a)(7) is a valid exercise of the FCC's rulemaking authority.  When a statute provides "a broad grant of rulemaking authority," the Fourth Circuit has held that "such regulations are presumptively valid and will be sustained so long as [they are] reasonably related to the purpose of the enabling legislation.  Thus, deference is to be accorded to the interpretation given to a statute by the agency charged with its administration."  *Harriman Mining Co. v. United States Dep't of Labor*, 826 F.2d 1388, 1390 (4th Cir. 1987) (quotations and citations omitted) (considering regulations issued pursuant to a statute granting the Secretaries of Labor and Health and Human Services "such regulations as each deems appropriate to carry out the provisions of this subchapter").  Here, Congress granted the FCC authority "to prescribe regulations to implement the requirements of [the TCPA]."[9]  42 U.S.C. § 227(b)(2).  Section 227(b) prohibits the sending of unsolicited fax advertising, and the FCC's regulatory prohibition of war dialing–the very purpose of which is to obtain fax numbers to be used in unsolicited fax advertising–is reasonably related to the purpose of the enabling legislation.  Thus, there should be no question that section 64.1200(a)(7) is valid.

Defendants also argue that because immediately after 42 U.S.C.§ 227(b)(2) gives the

---

[8] Under the Administrative Procedures Act, an "order" is defined as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter *other than rule making* but including licensing," 5 U.S.C. § 551(6) (emphasis added).  A "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing." 5 U.S.C. § 551(4).

[9] Moreover, Congress ordered the FCC to consider regulations that would "allow businesses to avoid receiving calls made using artificial or prerecorded voice to which they have not given their prior consent." 47 U.S.C. § 227(b)(2)(A).

FCC the broad grant of authority to "prescribe regulations to implement the requirements of [the TCPA], the statute then goes on to list specific regulations that the FCC may or must issue, *see* 42 U.S.C. § 227(b)(2)(A)-(F), the FCC therefore lacks the authority to issue regulations other than those listed.  Again, Defendants are incorrect. This reading of the statute is strained and unduly restrictive. Rather than limiting the FCC's authority, the aforementioned subsections serve merely to illustrate situations in which the FCC's otherwise broad discretion to issue regulations "reasonably related" to the purposes of the TCPA may be exercised.

Therefore, the FCC did not exceed its statutory authority in promulgating 47 C.F.R. § 64.1200(a)(7), and Defendants' motion to dismiss on this ground will be denied.

### 2. Civil Conspiracy [Count 5]

Defendants next argue that Count 5 fails to state a claim because the TCPA and Maryland statutes do not provide a cause of action for conspiracy, and because a corporate defendant cannot conspire with its officers. Def. Memo. in Supp. of Mot. to Dismiss Am. Compl. at 5-6**.**

In Maryland, "[t]o recover damages for civil conspiracy, it must be shown that there was an agreement *by at least two persons* to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, and that the act or means used resulted in damage to the plaintiff."  Maryland Pattern Jury Instructions Civil § 7:6 (emphasis added); *see Columbia Real Estate Title Ins. Co. v. Caruso*, 384 A.2d 468, 472-73 (Md. Ct. Spec. App. 1978).  In Count 5, Plaintiffs allege that Defendants conspired together and with others to arrange and/or cause thousands of telephone calls to be made to BWT telephone numbers for the purpose of determining whether they were voice or fax lines, and to arrange and/or cause over fifty unsolicited faxes to be sent to BWT's fax machines. These alleged actions are unlawful under both the TCPA and the Maryland law.  Plaintiff has also alleged that it suffered actual damage. Am. Compl.  ¶¶ 52-55.

However, the "intracorporate conspiracy doctrine" holds that acts of corporate agents are

attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. In essence, this means that a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *See, e.g., Marmott v. Maryland Lumber Company,* 807 F.2d 1180, 1184 (4th Cir. 1986); *Buschi v. Kirven,* 775 F.2d 1240, 1251 (4th Cir. 1985); *Denney v. City of Albany,* 247 F.3d 1172 (11th Cir. 2001). There are two exceptions to this general rule. The first is where the officer or agent has an "independent legal stake in achieving the corporation's legal objective" and the other is where the acts of the officers were unauthorized by the corporate defendant. *See United States v. EER Systems Corp.,* 950 F. Supp. 130, 132 (D. Md. 1996)(Williams, J.).

In *Huntington Life Sciences, Inc. v. Rokke*, the Eastern District of Virginia was presented with a conspiracy allegation very similar to that presented by Plaintiff in this case. 986 F. Supp. 982 (E.D. Va 1997). The complaint in *Huntington* alleged that "Newkirk, Rokke, and Sweetland, along with others known and unknown, knowingly joined in a conspiracy to participate in the affairs of the enterprise [PETA] . . . in violation of 18 U.S.C. 1962(d)." *See id.* at 991. The court dismissed the count for failure to state a claim because the plaintiff made no allegation that the individually named defendants had a personal stake in achieving the corporation's legal objective or that the acts of the individuals were unauthorized by the corporation. *Id.* Plaintiff's claim here contains the same fatal flaw. Without an allegation that the actions of the Horne Defendants fit within an exception to the intracorporate conspiracy rule, Count 5 fails to state a claim for civil conspiracy. The Horne Defendants' status as agents and/or employees of Hot Leads means that Plaintiff has not alleged an agreement between "at least two persons." Therefore, Defendants' motion will be granted as to Count 5.

Plaintiff urges the Court not to dismiss this count because the Hot Leads corporate defendant is a "fiction used by the Hornes to continue illegal fax broadcasting after their previous throw-away companies . . . were sued by state attorneys general and shut down. . . . To do otherwise would allow the Hornes to continue to do exactly what the Texas (*sic*) warned

about six years ago when it found the Hornes were by then willfully and knowingly violating the TCPA's fax ad restrictions." Pl. Memo. of Law in Opp. to Def. Mot. to Dismiss at 22 (referring to the decision in *State of Texas v. American Blast Fax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001).  However, the parties in this case should note that dismissal of Plaintiff's conspiracy count will not necessarily allow the individual Horne Defendants to escape joint and several liability.  In the *American Blast Fax* case, the court found the Hornes personally liable for TCPA violations, absent any conspiracy allegations, because it found that Greg and Michael Horne were the "guiding spirits" and "central figures" behind the TCPA violations, and because they "did far more than simply sit on the Blastfax board while the company violated the TCPA–they actually committed the conduct that violated the TCPA, and/or they actively oversaw and directed the conduct." 164 F. Supp. 2d at 897-98.  If and when similar conduct is proven in this case, the Horne Defendants still may be held jointly and severally liable for any TCPA damages this Court may award on the remaining counts.

### 3. Aiding and Abetting [Count 6]

Defendants argue that neither the TCPA nor the Maryland statute provides a right of action for aiding and abetting, and that Maryland does not recognize a cause of action for aiding and abetting a tortfeasor, citing *Alleco, Inc. v. Jeannette Weinberg Found.*, 99 Md. App. 696 (Md. Ct. Spec. App. 1994).  Defendants' latter argument is flawed, but its motion will be granted on the basis of the former.

First, it is clear that Maryland *does* recognize common law aiding and abetting of a tortfeasor, as the Court of Appeals of Maryland clarified in its later opinion in the case upon which Defendants rely. *See Alleco, Inc. v. Harry and Jeannette Weinberg Found.*, 665 A.2d 1038, 1049 (Md. 1995)("Maryland has expressly recognized aider and abettor tort liability." (quoting *Duke v. Feldman*, 226 A.2d 345, 347 (1967))).  Second, Plaintiff is not alleging that Defendants aided and abetted the commission of a *tort*. The allegation is that Defendants aided

-12-

and abetted a *statutory violation*, which calls for a different analysis.

"[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abetters." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 182 (1994).  Although 18 U.S.C. § 2 provides general aiding and abetting liability for criminal offenses, Congress has never created such a general cause of action in the civil context. Instead, civil aiding and abetting liability is determined on a statute-by-statute basis. *Id.* at 181-82.  Importantly, in *Central Bank*, the Supreme Court noted that "Congress [knows] how to impose aiding and abetting liability when it [chooses] to do so."[10] *Id.* at 176, 182-83 (noting that the Internal Revenue Code, Commodity Exchange Act, National Bank Act, Federal Reserve Act, Packers and Stockyards Act, and Insider Trading Sanctions Act of 1984 all include explicit aiding and abetting provisions, and finding it determinative that Section 10(b) of the Securities Exchange Act of 1934 does not).

Aiding and abetting liability is a "'method by which courts create secondary liability' in persons other than the violator of the statute." *Id.* at 184 (quoting *Pinter v. Dahl*, 486 U.S. 622, 648 n.24 (1988)). Aiding and abetting liability, by its nature, extends liability beyond those who engage, even indirectly, in a proscribed activity; it applies to persons who may not engage in the proscribed activities at all, but who simply give a degree of aid to those who do. *See id.* at 176.

It appears that no court has yet passed on the question of whether the Telephone Consumer Protection Act encompasses a cause of action for aiding and abetting. It is clear, however, that the statutory language does not specifically provide for such liability. *See* 47 U.S.C. 227(b)(3). In light of the plain language of the statute, and the holding in *Central Bank*,

---

[10]This Court notes that the actual holding of *Central Bank* as it pertains to § 10(b) of the Security Exchange Act was later superceded by statute.  Section 104 of the Private Securities Litigation Reform Act of 1995 added subsection (f) to 15 U.S.C. § 78(t), providing specifically for aiding and abetting liability for certain securities violations.  This only serves to underscore the point that if Congress wishes to create aiding and abetting liability for violation of the TCPA, it certainly knows how to explicitly do so.

this Court will not imply expanded liability under the TCPA for aiding and abetting.  Therefore, Defendants' motion to dismiss Count 6 will be granted.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Amended Complaint is denied as to Counts 1 through 4, and granted as to Counts 5 and 6.

Date: September 30, 2008                            _____/s/_____

                                                    ROGER W. TITUS
                                                    UNITED STATES DISTRICT JUDGE